876 So.2d 1026 (2003)
Leslie J. CORTEZ, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01374-COA.
Court of Appeals of Mississippi.
December 2, 2003.
Rehearing Denied January 27, 2004.
Certiorari Denied July 6, 2004.
*1028 Dan Duggan, Jr., Brandon, attorney for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
Before KING, P.J., IRVING, and GRIFFIS, JJ.
KING, P.J., for the Court.
¶ 1. Leslie J. Cortez was convicted in the Circuit Court of Rankin County of burglary of a dwelling. Aggrieved by his conviction and sentence, Cortez appeals and states his issues as follows:
I. Whether the trial court erred in denying Cortez's motion for a directed verdict and motion for a new trial
II. Whether the Court committed reversible error when it failed to suppress evidence of the gloves

FACTS
¶ 2. On October 17, 2000, the residence of Kelly Ainsworth in Braxton, Mississippi was burglarized. Ainsworth testified that around 8:00 that morning, she secured the lock and dead bolt on the door of her mobile home before leaving for work. She testified that the back door was likewise secured.
¶ 3. Don Storment was the neighbor and landlord of Ainsworth. His home was located about 100 yards behind and to the right of Ainsworth's home. Sometime during the mid-afternoon while taking a break from raking leaves in his yard Storment noticed a vehicle pull into Ainsworth's driveway, and then heard her dogs start barking. Storment ran into his house got his revolver and ran across his open pasture towards Ainsworth's home. Storment approximated the distance to be about 100 yards across the open pasture and about another 50 yards down Ainsworth's driveway.
¶ 4. While at the end of the driveway, Storment saw a man run from a red Chevrolet pick-up truck parked in the driveway of Ainsworth's home. Storment saw the man open the door and enter the trailer. Upon arrival at the trailer, Storment called out to the man and asked his identity and purpose there. According to Storment, after about 15-20 seconds a man emerged from the house. The man did not identify himself but was later identified as Cortez. Cortez said that Ainsworth had contacted him about putting skirting around the porch. Cortez stated that he worked for a construction company and asked Storment what time the woman would be home. When asked by Storment how he had gotten into the trailer, Cortez said that Ainsworth had left it unlocked.
¶ 5. Storment called Ainsworth and asked if she was expecting someone to come and look at her trailer. Ainsworth responded "no," after which Storment called the sheriff's department, reported the incident and gave a description of Cortez, and the truck he was driving. Ainsworth left work and met Storment at the courthouse in Brandon. A sheriff's deputy then followed them to Ainsworth's home. Ainsworth discovered that there was a torn place in the metal sheeting framing the front door; however, the dead bolt was still in place. Ainsworth testified that upon entering her home that her kittens were running around outside of the room in which she kept them enclosed, and the drawers in her bedroom chest had been rifled through and the clothing was disarrayed. However, Ainsworth noticed nothing missing or stolen from her residence.
¶ 6. After Storment's call to the sheriff's department, a sheriff's deputy recognized the description of the truck as one owned by Leslie Cortez. Cortez was found and informed that he was the focus of a criminal *1029 investigation and given the Miranda warnings. He then admitted being inside of Ainsworth's trailer. Cortez claimed to have knocked on the door looking for work and to have entered only after being bidden to do so.
¶ 7. Ainsworth testified that she was too frightened to stay alone, and did not return to her residence until the morning of October 24th. Upon returning to her home, Ainsworth noticed a pair of work gloves in the closet. She testified that they were not her gloves, and that they were not there on the morning of October 17th when she left for work. Ainsworth reported finding the gloves to the sheriff's office, and an investigator came and collected them as evidence. No forensic tests were conducted on the gloves.
¶ 8. At trial, Cortez called no witnesses and did not testify himself. Cortez was convicted by a jury on July 16, 2002, and sentenced to twenty-five years in the custody of the Mississippi Department of Corrections. Cortez was adjudged to be a habitual offender under Mississippi Code Annotated Section 99-19-81, and is therefore ineligible for parole.

ISSUES AND ANALYSIS

I.

Whether the trial court erred in denying Cortez's motion for a directed verdict, judgment notwithstanding the verdict, and motion for a new trial
¶ 9. Cortez asserts that the evidence does not support a conviction for burglary, and that at most the evidence supports a conviction for trespass. He contends that the trial court erred in denying his motions for directed verdict, judgment notwithstanding the verdict, and for a new trial. Cortez submits that there was no forensic evidence to link him to prying open the front door, the gloves, or to the disarrayed clothing. Cortez further contends that the State's case did not satisfy the elements of a burglary charge according to Mississippi Code Annotated Section 97-17-23 (Rev.2000)[1]. He asserts that while the State may have proven the first element of burglary, the physical act of entry, he contends that the State did not prove the second element of the crime, "intent to commit a crime therein." Cortez, through his statement to the deputy at the time of his arrest, claimed that he was at Ainsworth's trailer solely for the purpose of looking for work.
¶ 10. The standard of review for a motion for a directed verdict and judgment notwithstanding the verdict is the same. In a criminal case this Court set the standard of review as follows:
Once the jury has returned a guilty verdict this Court is not at liberty to direct that the defendant be found not guilty unless viewed in the light most favorable to the verdict no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty. Conners v. State, 822 So.2d 290, 293(¶ 6) (Miss.2001). This Court must consider as true all evidence consistent with the Defendant's guilt and the State must be given the benefit of all favorable inferences. *1030 McClain v. State, 625 So.2d 774, 778 (Miss.1993).
¶ 11. When considering the denial of a motion for a directed verdict, the evidence is viewed in the light most favorable to the State, and all evidence supporting a guilty verdict is accepted as true, and the prosecution must be given the benefit of all favorable inferences that can be reasonably drawn from the evidence. Nelson v. State, 839 So.2d 584, 586(¶ 3) (Miss.Ct.App.2003).
¶ 12. The State seldom has direct and positive testimony expressly showing the specific intent of an intruder at the time he unlawfully breaks into a dwelling house; however, such testimony is not essential to establish the intent to commit a crime. Dixon v. State, 240 So.2d 289, 290 (Miss.1970). "Some presumptions are to be indulged in against one who enters a building unbidden, at a late hour of night, else the burglar caught without boot might escape the penalties of the law." Dixon v. State, 240 So.2d 289, 290 (Miss.1970), citing State v. Worthen, 111 Iowa 267, 82 N.W. 910, 911 (1900). "Intent is an emotional operation of the mind, and it is usually shown by acts and declarations of the defendant coupled with facts and circumstances surrounding him at the time. Defendant's intention is manifested largely by the things he does." Dixon, 240 So.2d at 290, citing Newburn v. State, 205 So.2d 260, 265 (Miss.1967).
¶ 13. It is well established in Mississippi that a jury, as the finder of fact, is entitled to consider not only facts as testified to by witnesses, but all inferences that may be reasonably and logically deduced from the facts and evidence. Pryor v. State, 349 So.2d 1063, 1064 (Miss.1977).
¶ 14. A motion for a new trial concerns the weight of the relevant evidence. Conners v. State, 822 So.2d 290, 293(¶ 6) (Miss.2001). Motions for new trial rest in the sound discretion of the trial court, and should not be granted except to prevent an unconscionable injustice. Id.
¶ 15. First, we will address Cortez's motion for a directed verdict. At the close of the State's case the defendant asked the court to direct a verdict for trespassing. The trial court denied that motion after which the defendant rested his case. When considering the denial of a directed verdict, this Court reviews the evidence as it existed when that motion was last made. Because the defendant offered no evidence, we consider the record as it existed at the end of the State's case in chief. In his motion Cortez asserted that the State could not prove beyond a reasonable doubt that he pried open the door, and there was no indication that anything was stolen or removed from the house. Cortez argued that because he had no larcenous intent when he entered Ainsworth's residence that at most he was guilty of trespass.
¶ 16. The crime of burglary requires proof of (1) an unauthorized entry (or breaking), and (2) the intent to commit a crime after the unauthorized entry. Miss.Code Ann. § 97-17-23 (Rev.2000). Each element of burglary must be proven at trial. Hunter v. State, 684 So.2d 625(¶ 24) (Miss.1996). Where the underlying crime is not completed, the State has to offer sufficient facts to establish the necessary intent. Anderson v. State, 749 So.2d 283, 286(¶ 14) (Miss.Ct.App.1999).
¶ 17. The element of unauthorized entry was established through the testimony of Ainsworth, Storment and Deputy McBroome. Ainsworth testified to having secured the locks on her home prior to going to work, that she had not invited Cortez to, or into, her home for any purpose and that an interior door, which *1031 was kept closed, had been opened and her kittens released from their enclosure.
¶ 18. Storment testified to having seen Cortez pull into Ainsworth's driveway, to seeing Cortez entering and exiting Ainsworth's home and that upon inquiry, Cortez stated that Ainsworth had asked him to do some work, and left the door unlocked.
¶ 19. Deputy McBroome testified that Cortez admitted to being in Ainsworth's house, that Cortez claimed to have been there looking for work and that Cortez claimed to have entered Ainsworth's home only after being invited to do so.
¶ 20. The intent to commit a crime after the unauthorized entry was established by the testimony of Ainsworth. Ainsworth testified that she was unable to identify any particular items as having been stolen but noticed that the drawers to her chest had been rifled and were in disarray.
¶ 21. The State offered substantial evidence on each of the elements of burglary. Accordingly, we note no merit to this issue.
¶ 22. With regards to the denial of his requested JNOV, Cortez argues the same points as on the motion for directed verdict. As with the motion for directed verdict, the evidence must be considered in the light most favorable to the State, including giving it the benefit of all reasonable inferences which may be drawn from the facts. Nelson v. State, 839 So.2d 584, 586(¶ 3) (Miss.Ct.App.2003). If after doing so the record contains substantial credible evidence to support the jury verdict of guilty, the motion for JNOV should not be granted. James v. State, 777 So.2d 682, 689(¶ 18) (Miss.Ct.App.2000). If on the other hand the record lacks substantial credible evidence to support the verdict, it is an abuse of discretion to not grant a JNOV.
¶ 23. The facts are set forth above and offer substantial credible evidence upon which a jury could, and did, base a verdict of guilty to burglary. There is accordingly no merit to this issue.
¶ 24. As noted, the request for a new trial asks the court to hold that the verdict was contrary to the overwhelming weight of the evidence. Crowley v. State, 791 So.2d 249, 253(¶ 15) (Miss.Ct.App.2000), citing Lane v. State, 562 So.2d 1235, 1237 (Miss.1990). When a motion for a new trial is made, the court must accept as true all evidence which favors the verdict. Youngblood v. State, 759 So.2d 479, 483(¶ 17) (Miss.Ct.App.2000), citing Veal v. State, 585 So.2d 693, 695 (Miss.1991). The grant or denial of a motion for a new trial rests within the sound discretion of the court. Conners v. State, 822 So.2d 290, 293(¶ 6) (Miss.2001). That discretion should only be used to avoid an unconscionable injustice. Id. Unless the reviewing court upon an examination of that evidence finds it so lacking that to allow the verdict to stand would sanction an unconscionable justice, the motion for a new trial should be denied. McClain v. State, 625 So.2d 774, 778 (Miss.1993).
¶ 25. There was no abuse of discretion in the denial of Cortez's motion for a new trial.

II.

Whether the Court committed reversible error when it failed to suppress evidence of the gloves.
¶ 26. Cortez contends that the trial court committed reversible error by not suppressing the gloves which Ainsworth found in her closet after returning to her home on October 24th. He also objects to the method the State used to introduce the gloves to the jury. Cortez argues that under Mississippi Rule of Evidence 403 that the probative value of the gloves was outweighed by their prejudicial effect.
*1032 ¶ 27. The admission or exclusion of evidence rests in the sound discretion of the trial judge. Conners v. State, 822 So.2d 290, 293(¶ 6) (Miss.2001). This remains true even in the face of a Mississippi Rules of Evidence 403 probative versus prejudicial weighing. When the trial court determines that a Rule 403 factor substantially outweighs probative value, it is still within its discretion to determine whether to exclude the evidence, since Rule 403 states not that the evidence must be excluded in such cases, but rather that it may be excluded. Due to this discretion vested in the trial court, our task as an appellate court reviewing a Rule 403 determination is not to engage anew in the Rule 403 balancing process. We are simply to determine whether the trial court abused its discretion in weighing the factors and admitting or excluding the evidence. Gen. Motors Corp. v. Jackson, 636 So.2d 310, 314 (Miss.1992).
¶ 28. Cortez argues that there was no forensic or testimonial evidence which linked the gloves to the burglary, and their discovery a week after the burglary was too remote and rendered them irrelevant. Cortez also suggests that a picture which showed the gloves by the pry markings on the door, rather than in the closet where they were found, was unduly prejudicial, and was a basis for their suppression.
¶ 29. Ainsworth testified that she found the gloves in her closet a week after the burglary and the gloves did not belong to her. This testimony, while not connecting the gloves to Cortez, was sufficient to suggest it was more probable than not that a burglary had occurred. Under these facts the trial judge did not abuse his discretion. Accordingly, this issue is found to be without merit.
¶ 30. THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY OF A DWELLING, AS AN HABITUAL OFFENDER AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS PROCEEDING ARE TAXED TO RANKIN COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.
NOTES
[1] Mississippi Code Annotated Section 97-17-23 (Rev.2000) Burglary; Breaking and entering inhabited dwelling. Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit a crime therein, shall be punished by imprisonment in the Penitentiary not less than three (3) years nor more than twenty-five (25) years.