# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00434-COA

**KENNETH HARTZOG A/K/A KENNETH K. HARTZOG A/K/A KENNETH KEITH HARTZOG**     APPELLANT

v.

**STATE OF MISSISSIPPI**     APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/23/2015 |
| TRIAL JUDGE: | HON. JEFF WEILL SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ERIN ELIZABETH BRIGGS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/05/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON AND GREENLEE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Kenneth Hartzog was indicted for one count of being a felon in possession of a firearm in violation of Mississippi Code Annotated section 97-37-5 (Rev. 2014). After a trial by jury, Hartzog was found guilty as charged, and was sentenced as a habitual offender to serve ten years in the custody of the Mississippi Department of Corrections. He now appeals this conviction. Finding no error, we affirm.

## BACKGROUND

¶2.    On the morning of October 5, 2014, Jackson Police Department Officers Melvin Williams and Jeremy McCinnis were called to a home near Raymond Road, after receiving information that shots were fired there. After arriving at the residence, the officers cautiously approached, hearing what they believed to be a loud verbal altercation between a male and female. The front door was slightly open, and Officer Williams pushed on it. Then, he knocked and announced his presence. Hearing no response or acknowledgment, Officer Williams pushed the door completely open, and noticed a man and woman in the living room. The man and woman, undisturbed by the officers' arrival, continued their apparent argument.

¶3.    Officer Williams testified that he knew they were responding to a call about shots being fired, so he attempted to see what was in the male's hands; however, he could only see the male's left hand, which held a cell phone. But Officer McCinnis testified he saw the man holding a gun, and did not see what was in the man's other hand.

¶4.    Upon noticing the officers, the man walked towards the kitchen. Officer McCinnis testified that during that time, the man quickly went to the kitchen area, then threw the gun on the floor, and attempted to flee. Officer McCinnis then came into contact with the man, tackled him to the ground, and placed him in handcuffs. Both the man and woman were briefly questioned at the scene, and the woman, who owned the home, told officers the man was her boyfriend and he had accused her of cheating on him. The man was arrested, and his true identity, Hartzog, was discovered later. The woman was identified as Rosina Griffin.

¶5.    After his arrest, Hartzog signed a *Miranda*[1] waiver, and agreed to talk to Investigator

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Craig Crowley. During the interview, which was conducted after Hartzog was charged with being a felon in possession of a firearm, Hartzog admitted he obtained the gun from a back bedroom and shot it. The interview was admitted into evidence as Exhibit 4, and Hartzog's account of what happened is as follows.

¶6. Hartzog said he woke up that morning and realized his girlfriend was not in bed, so he went to look for her. He explained that Griffin had to work at 8 a.m., so she had gone to the front of the house to work out. When Hartzog came and found her, he noticed the door was messed up, and asked Griffin what had happened. Hartzog said Griffin had not been paying attention and had not noticed the damage. Then, Hartzog asked Griffin where the bat was that she sometimes kept by the door. Griffin told him she did not have the bat anymore, but told him she did have a gun. Although Hartzog did not see anyone who might have done the damage, Hartzog said he went and got the gun, stepped outside the front door, and fired a shot in the air. He explained that he thought Griffin's daughter may have gone to call the police. But, when the police arrived, they came straight towards him and grabbed him, even though he warned the police that the person who did the damage was going to get away. When Hartzog was asked whether the police ever found a suspect, he explained the police did not find anyone because they did not look.

¶7. Griffin, Hartzog's girlfriend at the time of his arrest (and wife at the time of his trial), testified she was at home with Hartzog on the day in question. Griffin stated, on that night, she heard a noise that woke her up, so she awoke Hartzog. She said, at some point, they noticed someone had kicked the door in, someone called the police, and the police came to

3

the home. Griffin explained that when the police arrived, she and Hartzog were not arguing. Instead, they were hysterical because someone kicked the door in. Griffin expressed that the officers never asked about the alleged burglary and, when they arrived, they immediately tackled Hartzog.[2] Griffin tried to explain to the officers that they had the wrong person—she thought the police were there to investigate a burglary. However, when she told the officers someone else had kicked the door in, Griffin testified that Officer McCinnis told her to shut up and accused her of lying. She also said he threatened that if she did not tell him she had a gun, he would take her to jail and call DHS to pick up her children, who were also at the home.[3] Griffin testified the police must have thought Hartzog was the aggressor, even though he did not run or make any sudden movements.

¶8.    Contrary to Hartzog's statement, Griffin testified Hartzog was only holding a cell phone. She said she did have a gun in the house, but it was six or seven steps away from Hartzog—inside a box—and she never told Hartzog it was there. Griffin stated that when Officer McCinnis threatened to call DHS, Hartzog almost started crying because he did not want anything to happen to her or the children. She reiterated that she never saw Hartzog with a gun, and did not see him fire a gun. Although Griffin was aware Hartzog told the police that Griffin had been working out before they arrived, Griffin testified that he must have said that because he was threatened. Griffin was also aware Hartzog admitted to holding the gun and shooting it that night, but had no explanation for that admission.

---

[2] Neither officer recalled any report of a house burglary.

[3] Officer McCinnis denied making any threats to Griffin or Hartzog, and both officers explained Griffin was not arrested because there was no reason to arrest her.

4

¶9.     The jury found Hartzog guilty as charged, and on November 24, 2015, Hartzog was sentenced to serve ten years in the custody of the Mississippi Department of Corrections, without the benefit of early release or probation. The court also ordered Hartzog to participate in alcohol and drug treatment while incarcerated.

**DISCUSSION**

### I.      Whether Hartzog timely appealed.

¶10.    Hartzog filed a motion for appointment of counsel and other relief on December 23, 2015, twenty-nine days after his sentence was imposed. In his motion, Hartzog informed the court he desired an appeal, his hired attorney had yet to perfect an appeal, and he could not afford to hire appellate counsel or pay the necessary filing fees and costs associated with preparing the record for an appeal. On March 21, 2016, the trial court entered an order authorizing an appeal in forma pauperis and appointing appellate counsel, in which the trial court found Hartzog indigent and entitled to file an out-of-time notice of appeal. Thereafter, Hartzog's appointed counsel filed a notice of appeal on March 28, 2016. The State now challenges Hartzog's entitlement to appeal. Jurisdiction is a question of law which this Court reviews de novo. *Busby v. Anderson*, 978 So. 2d 637, 639 (¶6) (Miss. 2008).

¶11.    Mississippi Rule of Appellate Procedure 4(a) requires that a notice of appeal be filed within thirty days after the entry of the judgment or order appealed from. M.R.A.P. 4(a). Rule 4(g) allows the trial court to extend the time for filing a notice of appeal upon a timely motion. M.R.A.P. 4(g). A motion for extension filed before the expiration of the thirty-day period in 4(a) may be granted for good cause and may be ex parte. *Id.* The trial court may

grant a party an additional thirty days in which to file his or her notice of appeal. *Id.*

¶12.   Hartzog's motion for appellate counsel and for other relief was filed within thirty days after the date the judgment was entered. The motion stated: "[I]f it has been more than thirty days from the date that Judgment was entered herein, or more than thirty days since denial of [the] post[-]trial motion, Defendant prays for authority from the court to file [an] appeal out of time pursuant to Rule 4[.]" Hartzog further indicated he was indigent and could not afford to hire appellate counsel or pay the filing fees and costs associated with preparing the record for appeal. Given these circumstances, we find good cause existed under Rule 4 for the trial court to grant Hartzog additional time to file his notice of appeal. *See* M.R.A.P. 4. Once appointed, Hartzog's counsel perfected the appeal within the trial court's thirty-day extension. We therefore find Hartzog's appeal was timely, and proceed to ruling on the merits of the case.

**II.   Whether the jury was adequately instructed.**

**a.   Denial of Defense's Proposed Instruction**

¶13.   At trial, defense counsel submitted the following jury instruction, D-6: "The Court instructs the jury if you believe from the evidence that the defendant did not know that there was a deadly weapon in the house, then it is your sworn duty to find the defendant not guilty." After taking the instruction under advisement, the trial court found it unnecessary. On appeal, Hartzog argues the trial court abused its discretion when it denied D-6 "because it was a correct statement of the law, it was supported by the evidence in this case, and it supported the theory of defense." He also argues that none of the instructions given

6

instructed the jury it must find Hartzog "knowingly and consciously possessed the weapon" in order to convict him.

¶14.    Jury instructions are not reviewed in isolation, but read as a whole to determine if the jury was properly instructed. *Milano v. State*, 790 So. 2d 179, 184 (¶14) (Miss. 2001). The instructions must fairly announce the law of the case and not create injustice. *Id.* "In other words, if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results." *Id.* While a defendant has a right to present his theory of the case, that right is not absolute and trial courts "may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions[,] or is without foundation in the evidence." *Davis v. State*, 18 So. 3d 842, 847 (¶15) (Miss. 2009).

¶15.    In this case, the jury was instructed on the essential elements of possession, as our law requires. Under Mississippi Code Annotated section 97-37-5, the State must prove two things for a person to be convicted of felon in possession of a weapon: (1) the defendant was in possession of a firearm, and (2) the defendant had previously been convicted of a felony crime. *Cooley v. State*, 14 So. 3d 63, 66 (¶13) (Miss. Ct. App. 2008). Jury instruction S-1A instructed the jury it must find Hartzog not guilty unless it found, beyond a reasonable doubt, Hartzog did "*willfully*, unlawfully have in his possession a Smith and Wesson handgun." As the Mississippi Supreme Court has acknowledged, "[i]t is inconceivable that an act *willfully* done is not also *knowingly* done." *Moore v. State,* 676 So. 2d 244, 246 (Miss. 1996) (quoting *Ousley v. State*, 154 Miss. 451, 122 So. 731, 732 (1929)). Therefore, although the jury was not instructed it must find Hartzog "knowingly" possessed the gun, the instructions that were

7

given covered the issue of "knowing possession." Further, when read as a whole, the instructions properly stated the law and required the jury to find that all elements of the offense had been proved before Hartzog could be found guilty.

### b.      Supplemental Instruction

¶16.    During deliberations, the jury asked the trial court three questions concerning the definition of possession. In response to the first two questions, the court informed the jury it should review the evidence and instructions presented, and should continue deliberating. Then, the jury asked a third question requesting information about "Mississippi law concerning convicted felon and possession." The trial court responded by providing the following written instruction, C-10:

> The Court instructs the jury that in determining whether the defendant, Kenneth Hartzog, was in possession of a weapon, it need not be actual physical possession in the defendant's hands or on his person. Constructive possession may be shown by establishing, beyond a reasonable doubt[,] that the defendant was aware of the presence and character of a particular item and that it was subject to his dominion or control.

> Ladies and gentlemen, you are further reminded to read and take all of these instructions as a whole. Although the court is giving a new instruction, you are not to single out any one instruction over the others and they are to be considered as a whole.

¶17.    Hartzog now argues C-10 should not have been given because: (1) constructive possession was a new prosecution theory that the jury was unfamiliar with, and (2) the instruction prejudiced Hartzog's defense by hindering his attorney's ability to provide effective counsel.[4] A trial court's decision to grant a supplemental instruction is reviewed for

---

[4] Hartzog asserts several other arguments which presume the trial judge did not instruct the jury on the elements of constructive possession. We decline to address those

8

an abuse of discretion. *Hughes v. State*, 983 So. 2d 270, 280 (¶41) (Miss. 2008).

¶18.    The guideline to follow when a jury has a question during deliberations was

enunciated in *Girton v. State*, 446 So. 2d 570, 572 (Miss. 1984):

> Our first recommendation is that the circuit judge determine whether it is
> necessary to give any further instruction. Unless it is necessary to give another
> instruction for clarity or to cover an omission, it is necessary that no further
> instruction be given. Of course, a circuit judge may realize such a necessity
> even in the absence of an inquiry from the jury, and under such circumstances
> quite properly may give the jury additional written instructions.

*Id.*

¶19.    Rule 3.10 of the Uniform Rules of Circuit and County Court Practice[5] states in

pertinent part, as follows:

> If the jury, after they retire for deliberations, desires to be informed of any
> point of law, the court shall instruct the jury to reduce its question to writing
> and the court in its discretion, after affording the parties an opportunity to state
> their objections or assent, may grant additional written instructions in response
> to the jury's request. If it appears to the court that the jury has been unable to
> agree, the court may require the jury to continue their deliberations and may
> give an appropriate instruction.

URCCC 3.10. Based upon the plain language of Rule 3.10 and the precedent cited above, the

trial court was within its authority to issue C-10.

¶20.    Again, in determining whether error lies in the granting or refusal of various

---

arguments, as that presumption is incorrect. It is clear from the record in this case that the
court provided the jury with a supplemental written instruction covering constructive
possession. *See* Suppl. C.P. 11. The full text of the supplemental instruction is found in the
jury-instruction portion of the record, but not in the transcript portion, which only refers to
the supplemental instruction.

    [5] Effective July 1, 2017, the Uniform Rules of Circuit and County Court Practice
were supplanted by the Mississippi Rules of Criminal Procedure. We apply the former rule
here because it was in effect when Hartzog's trial took place.

instructions, the instructions actually given must be read as a whole. *Milano*, 790 So. 2d at 184 (¶14). If the instructions, when so read, fairly announce the law of the case and create no injustice, no reversible error will be found. *Id.*

¶21.    We find the jury was fairly and fully appraised of the applicable law through the instructions given. Possession can be proven by showing the accused either actually possessed or constructively possessed a weapon. *Short v. State*, 929 So. 2d 420, 427 (¶21) (Miss. Ct. App. 2006). Constructive possession requires that the defendant was aware of the presence and character of the particular item, and was intentionally and consciously in possession of it. *Curry v. State*, 249 So. 2d 414, 416 (Miss. 1971). Constructive possession may be shown by establishing the item involved was subject to his dominion or control. *Id.* Here, C-10 instructed the jury it had to find beyond a reasonable doubt that (1) Hartzog was aware of the presence and character of a particular item, and (2) the item was subject to Hartzog's dominion and control. In addition, S-1A contained language to the effect of proving Hartzog "intentionally and consciously" possessed the gun. We therefore find that the jury was fairly and adequately instructed on constructive possession. This issue is without merit.

## CONCLUSION

¶22.    The jury was fairly and adequately instructed on both actual and constructive possession. Denial of jury instruction D-6 was not error; read as a whole, the jury instructions fairly and adequately covered the issue of possession. Further, instruction S-1A covered the issue of "knowing possession." The trial court was within its discretion to issue a

supplemental written instruction under Rule 3.10 following the jury's request for additional information.

¶23.    **AFFIRMED.**

    **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, WESTBROOKS AND TINDELL, JJ., CONCUR.**