# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00753-COA

**PAUL BARTON A/K/A PAUL ANTHONY BARTON**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                    **APPELLEE**

DATE OF JUDGMENT:                    02/02/2018
TRIAL JUDGE:                    HON. JANNIE M. LEWIS-BLACKMON
COURT FROM WHICH APPEALED:    YAZOO COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        OFFICE OF STATE PUBLIC DEFENDER
                               BY: MOLLIE MARIE McMILLIN
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:             AKILLIE MALONE OLIVER
NATURE OF THE CASE:            CRIMINAL - FELONY
DISPOSITION:                   AFFIRMED - 01/14/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**CARLTON, P.J., FOR THE COURT:**

¶1. Paul Barton appeals his convictions for possession of a stolen firearm and possession of a firearm by a felon. On appeal, Barton is represented by the Indigent Appeals Division of the Office of State Public Defender. In the brief filed by the Office of State Public Defender, Barton argues that his indictment failed to allege an essential element of the crime of possession of a stolen firearm and that the evidence is insufficient to support the jury's verdict. Barton also filed a pro se supplemental brief and asserted that the State inappropriately used the phrase "constructive possession" during Barton's trial and that the

cumulative error doctrine requires a reversal of his convictions.

¶2.    After our review, we find no error. We therefore affirm Barton's convictions and sentences.

## FACTS

¶3.    Officer Edward Ferrell of the Yazoo County Sheriff's Department testified that on March 1, 2017, he and Officer Cory Freeman received a dispatch and responded to a 911 call from a woman named Doris concerning "a man chasing someone in the yard with a weapon." When they arrived on the scene, Doris informed Officer Ferrell that Barton was chasing her grandson with a weapon. Doris told the officers that Barton had left the scene prior to their arrival, and she described what Barton was wearing.

¶4.    After the officers spoke with Doris, Officer Freeman left to search for Barton. Officer Freeman soon called Officer Ferrell and alerted him that he had stopped a pick-up truck and that Barton was the passenger. Officer Ferrell responded to the scene and observed Officer Freeman with his weapon drawn and pointed at the driver of the pick-up truck, telling him to put the truck in park. Officer Ferrell identified Robert Donelson as the driver and owner of the truck. According to Officer Ferrell, Barton was in the passenger seat of the truck, and Officer Freeman was yelling at Barton "Quit reaching down!" Officer Freeman informed Officer Ferrell that Barton had a gun, so Officer Ferrell pulled out his weapon and pointed it at Barton. Officer Ferrell testified that Barton began to comply with Officer Freeman's instructions when Barton realized Officer Ferrell had his weapon pointed at him. Barton exited the truck, and Officer Freeman placed handcuffs on him.

2

¶5. Officer Ferrell testified that he and Officer Freeman then went to the passenger side of the truck, opened the door, and discovered a weapon "just laying right there, sticking out up underneath the seat." Officer Ferrell ran the serial number on the weapon and testified that the weapon had been reported stolen.

¶6. Officer Freeman testified as follows: upon being dispatched to the scene of the disturbance, the 911 dispatcher informed him that "a Mr. Paul Barton was chasing a child . . . and had a hand gun." The 911 dispatcher informed Officer Freeman that Barton was wearing a white t-shirt and dark colored jeans. Upon arriving at the scene, Doris informed him that Barton had already left the scene. As he was talking to Doris, Officer Freeman observed a white truck drive by and spotted Barton inside of the truck. Officer Freeman "ran and jumped" into his patrol car and caught up with the truck, where he then performed a traffic stop.

¶7. As Officer Freeman approached the driver-side window of the truck, he observed Barton, who was in the passenger seat, "trying to conceal something" underneath the seat. Officer Freeman clarified that he could see Donelson's hands at all times. He trained his weapon on Barton and ordered Barton to show his hands, but Barton refused. He testified that Barton eventually complied and raised his hands, but when he did, Officer Freeman "heard something drop . . . [and] hit the bolts on the bottom of the floorboard." (Officer Freeman stated at trial that "it was like a weapon over there.") He ordered Barton and Donelson to exit the vehicle, and he placed Barton in handcuffs. Officer Freeman then opened the door on the passenger side of the truck and found a handgun.

3

¶8.    Officer Freeman testified that upon discovering the weapon, he handed it to Officer Ferrell, and the two officers ran the serial number. Dispatch informed the officers "that the handgun was stolen out of Madison[, Mississippi]." Officer Freeman testified that he asked Barton who the weapon belonged to, and Barton denied that it was his weapon.

¶9.    L.Q. Boyd Jr. testified at trial that he owned the weapon Officer Freeman had discovered. Boyd testified that the gun was stolen, but he did not know who had stolen it. Boyd testified that he did not know Barton and did not give his gun to Barton or let Barton borrow it.

¶10.    After the State rested, the defense made a motion for a directed verdict and argued the State failed to prove beyond a reasonable doubt that Barton had a gun in his possession or that Barton knew the gun was stolen. The trial court denied the motion for a directed verdict, explaining that the State "has put forth a prima facie case of constructive possession" of a stolen firearm.

¶11.    Donelson, the driver of the truck, also testified at trial. Donelson denied seeing Barton with a weapon that day. Donelson stated that he has known Barton for approximately five years and could not recall ever seeing Barton with a gun. Donelson also denied seeing Barton drop a weapon or try to conceal a weapon during the traffic stop. Donelson testified that another man, Main Gainwell, rode in the passenger seat of his truck earlier that same day. However, Donelson stated that he has never seen Gainwell with a gun.

¶12.    Investigator Terry Gann of the Yazoo County Sheriff's Department testified that he investigated the 911 call from March 1, 2017, and also worked to identify the stolen weapon.

Investigator Gann testified that Barton denied any involvement with the gun. Investigator Gann explained at trial that he was unable to locate any fingerprints on the gun, testifying, "You don't find fingerprints on a weapon. You'd luckily get it on a flat smooth surface. There were no fingerprints. We weren't able to lift fingerprints from that weapon because of the way the weapon is designed and how small it is."

¶13. Regarding the 911 call, Investigator Gann said that the 911 dispatcher informed him that a woman named Doris made the 911 call reporting Barton chasing her grandson with a gun. When Investigator Gann met with Doris, she denied that anything ever happened at the home on that day. Angela Russell, the 911 dispatcher who received the call in question, testified that she did receive a 911 call on March 1, 2017, from a woman who identified herself as Doris. Russell testified that Doris reported "a Paul Barton chasing [her] grandson with a handgun."

¶14. The jury returned a verdict finding Barton guilty of one count of possession of a stolen firearm (Count I) and one count of possession of a firearm by a convicted felon (Count II). The Yazoo County Circuit Court sentenced Barton as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015), to serve five years for Count I and ten years for Count II, all in the custody of the Mississippi Department of Corrections, with the sentences to run consecutively. Barton filed a post-trial motion for judgment notwithstanding the verdict or a new trial, which the trial court denied. Barton now appeals.

**DISCUSSION**

I. **Defective Indictment**

5

¶15. Barton argues that the indictment in Count I failed to allege an essential element of the crime of possession of a stolen gun: that Barton *knowingly* possessed a stolen gun.

¶16. "The purpose of an indictment is to provide a defendant notice and a reasonable description of the charges against him so that he may prepare an adequate defense." *Scott v. State*, 141 So. 3d 34, 36 (¶7) (Miss. Ct. App. 2014). This Court has held that "in order for an indictment to be sufficient, it must contain the essential elements of the crime charged." *Dartez v. State*, 271 So. 3d 733, 738 (¶16) (Miss. Ct. App. 2018). We employ a de novo review when reviewing issues concerning the sufficiency of an indictment. *Id*. We recognize that "[t]he ultimate test, when considering the validity of an indictment on appeal, is whether the defendant was prejudiced in the preparation of his defense." *Warren v. State*, 187 So. 3d 616, 621-22 (¶10) (Miss. 2016).

¶17. Barton acknowledges that he did not object to the indictment at trial, but he correctly asserts that a challenge to an indictment for the failure to charge the essential elements of a criminal offense may not be waived and can therefore be raised for the first time on appeal. *Ross v. State*, 954 So. 2d 968, 1015 (¶126) (Miss. 2007).

¶18. Mississippi Code Annotated section 97-37-35(1) states: "It is unlawful for any person knowingly or intentionally to possess, receive, retain, acquire or obtain possession or dispose of a stolen firearm or attempt to possess, receive, retain, acquire or obtain possession or dispose of a stolen firearm." Miss. Code Ann. § 97-37-35(1) (Rev. 2014). Barton's indictment for Count I, possession of a stolen firearm, charged as follows:

> Barton, on or about the 1st day of March, 2017, in Yazoo County, Mississippi, did willfully, feloniously, and unlawfully possess a stolen gun, property of L.

6

Q. Boyd, Jr., in violation of 97-37-35 of the Mississippi Code of 1972, as amended, against the peace and dignity of the State of Mississippi.

Barton asserts that based on the indictment he could be convicted of possession of a stolen gun whether or not he knew the gun was stolen.

¶19. The State acknowledges that the language in Barton's indictment does not track the language of section 97-37-35. However, the State argues that the words that were used in his indictment have substantially the same meaning as those in the statute; therefore, it was specific enough to give him notice of the charge against him.

¶20. In *State v. Hawkins*, 145 So. 3d 636, 641 (¶12) (Miss. 2014), the supreme court reiterated that the "terms 'willfully' and 'knowingly' have substantially the same meaning in criminal statutes." *See also Boyd v. State*, 977 So. 2d 329, 335 (¶22) (Miss. 2008) ("An act 'willfully' done is an act 'knowingly' and 'intentionally' done."); *Moore v. State*, 676 So. 2d 244, 246 (Miss. 1996) ("'[W]illfully' means 'knowingly.'"). The supreme court has held, "It is inconceivable that an act willfully done is not also knowingly done." *Ousley v. State*, 154 Miss. 451, 122 So. 731, 732 (1929) (emphasis omitted) (finding an indictment was sufficient where it contained the words "willfully, unlawfully[,] and feloniously" rather than "knowingly[,]" as used in the statute).

¶21. After comparing the indictment to the statute, we find that Barton's indictment was sufficient to provide him with reasonable notice of the charges against him and that he would have been able to prepare his defense adequately. *See Hawkins*, 145 So. 3d at 641 (¶15). This issue lacks merit.

II. **Sufficiency of the Evidence**

¶22. Barton next argues that the evidence is insufficient to prove that Barton had knowledge that the gun found under his seat was stolen. "When reviewing challenges to the sufficiency of the evidence, we view all evidence in the light most favorable to the State." *Thomas v. State*, 277 So. 3d 532, 535 (¶11) (Miss. 2019). This Court "must affirm if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. (internal quotation mark omitted). "[T]he State receives the benefit of all favorable inferences that may be reasonably drawn from the evidence." *Id*.

¶23. To prove guilty knowledge in a possession-of-a-stolen-firearm case, this Court has held that the State "must prove that the defendant received the property under circumstances that would lead a reasonable person to believe that it was stolen." *Hobson v. State*, 181 So. 3d 1021, 1027 (¶15) (Miss. Ct. App. 2015). "[T]he prosecution is to be given all favorable inferences from the evidence that was presented at trial." *Id*.

¶24. Barton acknowledges that the State presented evidence that the gun was stolen by calling the owner of the gun to testify that he reported it stolen. However, Barton maintains that the State presented no evidence of when the gun was stolen, where it was stolen from, or how Barton came to have possession of it. In *Hobson*, this Court stated that "[t]he unexplained possession of recently stolen property is a circumstance from which culpability of a crime may be inferred." *Id*. To evaluate that inference, this Court examines the following factors:

1.    The temporal proximity of the possession to the crime to be inferred;

2.    The number or percentage of the fruits of the crime possessed;

3. The nature of the possession in terms of whether there is an attempt at concealment or any other evidence of guilty knowledge;

4. Whether an explanation is given and whether that explanation is plausible or demonstrably false.

*Id*. at 1028 (¶15). The supreme court has stated that these factors are to be considered; the State is not required to offer evidence to satisfy each factor. *See Shields v. State*, 702 So. 2d 380, 383 (Miss. 1997) (affirming the defendant's conviction where the supreme court found that factors 1, 2, and 4 "lend[ed] strength" to the inference that the defendant was guilty, but "the third factor detract[ed] from the inference"); *Harris v. State*, 908 So. 2d 868, 873-74 (¶¶16-20) (Miss. Ct. App. 2005) (affirming the defendant's conviction for burglary where this Court found that three of the four factors "lend[ed] strength to the inference" of the defendant's guilt).

¶25. In *Hobson*, 181 So. 3d at 1027 (¶3), the defendant, Christopher Hobson, was convicted of four charges, including possession of a stolen firearm and possession of a firearm by a felon. On appeal, Hobson argued that the State failed to present sufficient evidence that Hobson possessed a stolen firearm and was aware the firearm was stolen. *Id*. at 1027 (¶14). Upon review, this Court determined that "the circumstances surrounding the incident and Hobson's actions were sufficient for the jury to infer that he knowingly and intentionally possessed a stolen firearm" and therefore found no merit to Hobson's argument. *Id*. at 1028 (¶17). This Court reviewed the evidence and noted that in response to the defense's motion for a directed verdict, the State argued that Hobson "is a convicted felon and there's no way that he could purchase a handgun at any reputable dealership, that he

9

could not go to a gun show and purchase one. I think that in and of itself brings credibility to the fact that he knew it was stolen." *Id*. at (¶16). Additionally, the owner of the gun testified that it had been stolen. *Id*. This Court recognized that the trial court cited the four factors to be considered to evaluate the inference of culpability and "concluded that Hobson possessed the gun, which was the only item stolen; he discarded the gun while running from the officer, evincing guilty knowledge; and no explanation was given as to how he possessed the weapon." *Id*. The trial court stated, "The fact that there is evidence there, that regardless of possession of recently stolen property, the fact that the [d]efendant discarded the weapon, those are circumstances from which a jury could infer guilty knowledge in the fact that he had a stolen firearm." *Id*.

¶26.    In the present case, as stated, the defense made a motion for a directed verdict and argued the State failed to prove that Barton possessed knowledge that the gun was stolen. The State argued it had shown that Barton possessed the gun through constructive possession. The State asserted that Officer Freeman testified that he observed Barton trying to conceal something underneath the passenger seat and that when Barton eventually complied with Officer Freeman's orders and raised his hands, Officer Freeman heard the gun drop and hit the bolts on the bottom of the floorboard. The police officers on the scene testified that they found the gun sticking out under the passenger seat. The State also argued it established that the gun was reported stolen and that Boyd did not give the gun to Barton. The State maintained that "[t]here's no lawful legal way that [Barton] could possess the firearm." After the trial court denied Barton's motion for a directed verdict, the jury heard

10

testimony from Donelson, who testified that the gun did not belong to him.[1]

¶27. After viewing all of the evidence in the light most favorable to the State, we find that the circumstances surrounding Barton's possession of the gun were sufficient to create an inference that Barton knowingly or willfully possessed a stolen firearm. *See Thomas*, 277 So. 3d at 535 (¶11). This issue lacks merit.

### III. Constructive Possession

¶28. In his pro se supplemental brief, Barton asserts that the State improperly used the phrase "constructive possession" and therefore deprived him of his right to a fair and impartial trial.

¶29. "Pursuant to Mississippi Code Annotated section 97-37-5 [(Rev. 2014)], the State must prove two things for a person to be convicted of felon in possession of a weapon . . . : (1) the defendant was in possession of a firearm, and (2) the defendant had previously been convicted of a felony crime." *Gunn v. State*, 174 So. 3d 848, 865-66 (¶63) (Miss. Ct. App.

---

[1] The separate opinion asserts that the majority relies on an inference in its determination that the circumstances surrounding Barton's possession of the gun were sufficient for a jury to find that Barton knowingly or willingly possessed a stolen firearm. Sep. Op. at (¶34). As stated above, this Court has held that "[t]he unexplained possession of recently stolen property is a circumstance from which culpability of a crime *may be inferred*." *Hobson*, 181 So. 3d at 1027 (¶15) (emphasis added). The separate opinion further submits that the majority's argument ignores that Barton, a convicted felon, was attempting to hide possession of the gun by throwing it under the seat. Sep. Op. at (¶34). The record clearly states that at trial, both the State and Barton stipulated at trial that Barton was a convicted felon. "It is well established in Mississippi that a jury, as the finder of fact, is entitled to consider not only facts as testified to by witnesses, but all inferences that may be reasonably and logically deduced from the facts and evidence." *Cortez v. State*, 876 So. 2d 1026, 1030 (¶13) (Miss. Ct. App. 2003). The majority acknowledges and certainly does not ignore that the jury in this case was tasked with considering "all inferences that may be reasonably and logically deduced" from the fact that Barton was a convicted felon, including whether Barton was attempting to hide possession of the gun. *Id*.

2014). As to the element of possession, this Court has stated that "[p]ossession can be proven by showing the accused either actually possessed or constructively possessed a weapon." *Hartzog v. State*, 240 So. 3d 462, 468 (¶21) (Miss. Ct. App. 2017). "Constructive possession allows the State to establish possession when evidence of actual possession is absent." *Billups v. State*, 270 So. 3d 917, 920 (¶8) (Miss. Ct. App. 2018). We therefore find no error in the State's use of the term "constructive possession" during Barton's trial. We also find no error in the trial court's grant of jury instruction 4, which instructed the jury that "[p]ossession, as the term is used in this case, may be actual or constructive" and then set forth the elements of both actual and constructive possession. "Just as the State must prove each element of the offense, the jury must be correctly and fully instructed regarding each element of the offense charged." *Lyles v. State*, 12 So. 3d 532, 541 (¶28) (Miss. Ct. App. 2009) (internal quotation marks omitted). This issue lacks merit.

### IV. Cumulative Error

¶30. Barton maintains that due to the cumulative errors that occurred during his trial, this case should be reversed and remanded for a new trial. After our review, we find no individual errors on appeal. "[I]f there are no individual errors, there can be no cumulative error that warrants reversal." *Harding v. State*, 17 So. 3d 1129, 1133 (¶13) (Miss. Ct. App. 2009). This issue lacks merit.

¶31. **AFFIRMED.**

**J. WILSON, P.J., TINDELL, LAWRENCE AND C. WILSON, JJ., CONCUR. WESTBROOKS, McDONALD AND McCARTY, JJ., CONCUR IN PART AND DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION. GREENLEE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN**

12

**OPINION, JOINED BY BARNES, C.J., WESTBROOKS, McDONALD AND McCARTY, JJ.**

**GREENLEE, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶32. I concur with the majority concerning the validity of the indictment. However, I believe Barton's conviction for possession of a stolen firearm is not supported by sufficient evidence. Therefore, I would reverse and render the conviction for that charge.

¶33. Officers Cory Freeman and Edward Ferrell found Barton, who was a felon, sitting in the passenger seat of Robert Lee Donelson's sister's vehicle. Donelson was driving the vehicle. Located underneath the passenger seat was a firearm, which was later determined as stolen. Under Mississippi Code Annotated section 97-37-35(1) (Rev. 2014), "[i]t is unlawful for any person knowingly or intentionally to possess, receive, retain, acquire or obtain possession or dispose of a stolen firearm or attempt to possess, receive, retain, acquire or obtain possession or dispose of a stolen firearm." To be convicted under this statute, the State must show that the defendant was knowingly in possession of a stolen firearm. *See Long v. State*, 933 So. 2d 1056, 1058 (¶6) (Miss. Ct. App. 2006) ("Guilty knowledge must be both alleged and proved by the State for a conviction to stand.").

¶34. According to the majority, Barton *knew* the firearm was stolen because his possession of the firearm was unexplained, the firearm was stolen, and he attempted to conceal the firearm. This argument relies on an inference. *See Hobson v. State*, 181 So. 3d 1021, 1027-28 (¶¶15-16) (Miss. Ct. App. 2015). It also ignores that in throwing the firearm under the seat, Barton, a person previously convicted of a felony, was attempting to hide possession of the weapon.

13

¶35.    Before *Hobson v. State*, the Mississippi Supreme Court extrapolated a four-factor

consideration from the Eleventh Circuit to infer that a defendant committed *burglary* from

his unexplained possession of stolen firearms.  *Shields v. State*, 702 So. 3d 380, 382-83

(Miss. 1997) (citing *Cosby v. Jones*, 682 F.2d 1373, 1382-83 (11th Cir. 1982)).  As noted by

the majority, the considerations are:

> 1. The temporal proximity of the possession to the crime to be inferred;

> 2. The number or percentage of the fruits of the crime possessed;

> 3. The nature of the possession in terms of whether there is an attempt at
> concealment or any other evidence of guilty knowledge;

> 4. Whether an explanation is given and whether that explanation is plausible
> or demonstrably false.

*Id.* at 383.  Since then, the consideration has been limited to burglary cases concerning the

unexplained possession of items.  *E.g.*, *Jones v. State*, 995 So. 2d 146, 150 (¶¶9-11) (Miss.

Ct. App. 2008).  In *Hobson*, however, this Court extended the consideration to a case

involving the possession of a stolen firearm in violation of Mississippi Code Annotated

section 97-37-35.  *Hobson*, 181 So. 3d at 1028 (¶17).  The instant case marks this Court's

second extension of the consideration to a case involving the possession of a stolen firearm.

¶36.    The extension is misplaced here because the facts in the case sub judice are

distinguishable from the facts in *Hobson*.  First, Barton did not attempt to evade an arrest.

In *Hobson*, the defendant failed to stop, "sped through three stop signs," engaged in a

physical altercation with the police officer, and did not surrender until the officer

successfully "discharged a taser into [the defendant's] back."  *Id.* at 1023-24 (¶¶1-2).  Thus,

14

it is evident that the defendant in *Hobson* went to a much greater length to avoid arrest than Barton. Second, Barton dropped the firearm underneath the passenger seat. The defendant in *Hobson* "thr[ew] down a black handgun between some cars" while fleeing on foot. *Id.* at 1024 (¶2). More probable, Barton's attempt to conceal the firearm under the seat was because of his status as a convicted felon. Third, this Court found that the circumstances surrounding the incident in *Hobson* coupled with that defendant's actions were "sufficient for the jury to infer that he knowingly and intentionally possessed a stolen firearm." *Id.* at 1028 (¶17). Upon review of the factors, the evidence presented by the State in this case does not support such an inference.

¶37. The first factor, the temporal proximity of possession, detracts from the inference. The owner of the firearm testified that he did not know his firearm was stolen until "[he] went to look for it one day and it was gone." So we do not know when Barton came into possession of the firearm based on this record. We also do not know the circumstances in which Barton received the firearm. *See Long*, 933 So. 2d at 1058 (¶6) (citing *Ellett v. State*, 364 So. 2d 669, 670 (Miss. 1978)) ("For the State to prove guilty knowledge, it must prove that [the defendant] received the property under circumstances that would lead a reasonable person to believe that it was stolen."). The second factor, number or percentage of the fruits of the crime possessed, is not met, as no other stolen items were recovered. Under this factor, the higher the percentage of items possessed, then the greater the likelihood the defendant committed the burglary. The third factor appears to weigh in favor of a split inference. Barton, as a convicted felon, would want to distance himself from the firearm.

15

So was his hiding of the firearm for that reason, or was it because Barton knew the firearm was stolen? According to Officer Freeman, Barton attempted to conceal the firearm underneath the passenger seat. Barton's attempt at concealment evinces guilty knowledge, but of what? The jury was not instructed on how to determine whether Barton knowingly possessed the firearm. In fact, the jury asked for a definition of "possession of stolen firearm." But the court did not respond directly to that question. Instead, the court issued "Jury Instruction No. 10," which instructed the jury to continue their deliberations. Notably, the third factor does not lend as much strength in the instant case as it did in *Hobson* because there is no "other evidence of guilty knowledge." In *Hobson*, the defendant fled, but in this case, Barton did not flee or attempt to flee. *Hobson*, 181 So. 3d at 1023-24 (¶¶1-2); *see also Jones v. State*, 819 So. 2d 558, 562 (¶14) (Miss. Ct. App. 2002) (finding the third factor to support an inference of burglary because the defendant attempted to conceal stolen items, *and* the defendant fled the state after telling a witness that he needed to leave Mississippi so he would not get caught). Finally, the fourth factor may weigh in favor of the inference because Barton did not offer an explanation for why he possessed the firearm. The chief investigator, Terry Gann, testified that Barton denied having the gun. *See Shields*, 702 So. 2d at 383 (citing *Cosby*, 682 F.2d at 1380)) ("[T]he inference is at its strongest when the defendant wholly fails to make a credible explanation or makes a demonstrably false explanation.").

¶38. Nevertheless, in considering the sufficiency of the evidence to support a conviction, "we view the evidence in the light most favorable to the State" and "ask whether any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sellers v. State*, 108 So. 3d 456, 458-59 (¶6) (Miss. Ct. App. 2012) (internal quotations omitted). The jury concluded that Barton was guilty of possession of a firearm by a convicted felon. That said, I do not believe any rational trier of fact could find beyond any reasonable doubt that the State proved that Barton knew the firearm was stolen based on the record before us. The circumstances and Barton's actions are simply not strong enough to infer that Barton knowingly possessed a stolen firearm. Therefore, I respectfully concur in part and dissent in part.

**BARNES, C.J., WESTBROOKS, McDONALD AND McCARTY, JJ., JOIN THIS OPINION.**